# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| TERRY W. GIVENS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| JOEY O'QUINN, ET AL., ) | |
| ) | Case No. 2:02CV00214 |
| Defendants. ) | Case No. 1:04CV00125 |
| ) | |
| _____ ) | **OPINION** |
| ) | |
| SAMANTHIA STILLWELL, ) | By: James P. Jones |
| ) | Chief United States District Judge |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| RICHLANDS POLICE ) | |
| DEPARTMENT/TOWN OF ) | |
| RICHLANDS, ) | |
| ) | |
| Defendant. ) | |

*Hillary K. Johnson, Abingdon, Virginia, for Plaintiffs.*

For the reasons set forth in this opinion, it is appropriate to impose sanctions under Rule 11 on the lawyer for the plaintiffs in these cases for filing and advocating motions to recuse the presiding judge.

I

Identical motions to recuse were filed on the same day in each of these cases by attorney Hilary K. Johnson, representing the plaintiffs. The motions sought the recusal of the presiding judge on the basis of "a severe prejudice towards plaintiffs" in "employment and civil rights cases" and "personal contempt and prejudice against [attorney Johnson]." (Mots. ¶¶ 7(a), (b).) In the first case, *Givens v. O'Quinn*, the plaintiff, Terry W. Givens, a correctional officer at Wallens Ridge State Prison, claims he was assaulted by two co-workers. He filed this action against the co-workers, as well as other employees of the Virginia Department of Corrections, asserting claims under 42 U.S.C.A. § 1983 (West 2003), as well as tort claims under state law. Upon a motion to dismiss, the court dismissed the plaintiff's federal claims on the ground that state action was not involved in the co-workers' assault. The state tort claims were dismissed without prejudice. The plaintiff was granted leave to file an amended complaint in order to assert a retaliation claim. After it had been filed, it was also dismissed for failure to state a claim. *See Givens v. O'Quinn*, No. 2:02CV00214, 2003 WL 22037700, at *1 (W.D. Va. Aug. 29, 2003).

On appeal by the plaintiff, the Fourth Circuit remanded the case for further proceedings on the federal claims, a majority of the court holding that the plaintiff's complaint sufficiently alleged state action. *Givens v. O'Quinn*, 121 Fed. Appx. 984,

985 (4th Cir. 2005) (unpublished). The dismissal of the retaliation claim was affirmed. *Id.* The case was reset for trial in this court and on July 19, 2005, the plaintiff's attorney filed a Motion to Recuse and Memorandum in Support Thereof.

In the other case, *Stillwell v. Richlands Police Department/Town of Richlands*, the plaintiff, Samantha Stillwell, contended that she had been discriminated against on account of her sex during her employment by the Richlands Police Department. She asserted claims under the Equal Pay Act and Title VII of the Civil Rights Act of 1964. By scheduling order of December 7, 2004, the case was set for jury trial to commence August 23, 2005. On July 19, 2005, the plaintiff's attorney filed a Motion to Recuse and Memorandum in Support Thereof, identical to that filed in the *Givens* case. In addition, on that same day she filed a Motion to Continue/Reschedule Jury Trial, contending that she was not prepared for trial because she had not received certain discovery from the defendant. A magistrate judge of this court granted the motion to continue the trial.[1]

The motions to recuse were heard by the court on July 28, 2005, and denied by oral opinion in each case. Thereafter, on August 3, 2005, the court sua sponte entered an order directing the attorney Ms. Johnson to show cause why she should not be sanctioned by the court pursuant to Federal Rule of Civil Procedure 11 for filing and

---

[1] The case was thereafter settled by the parties without further proceedings.

advocating the motions to recuse. A hearing was held on the show cause orders on September 14, 2005, and the issues are now ripe for decision.

II

Under Rule 11, by presenting to the court a written motion, the attorney "is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims . . . and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed. R. Civ. P. 11(b). If the court determines that Rule 11 has been violated, it may impose an appropriate sanction on the attorney responsible for the violation. Fed. R. Civ. P. 11(c). In deciding whether to impose Rule 11 sanctions, the court should apply an "objective test of reasonableness." *Artco Corp. v. Lynnhaven Dry Storage Marina, Inc.*, 898 F.2d 953, 955-56 (4th Cir. 1990).

Congress has provided the statutory basis for recusal of judges at 28 U.S.C.A. §§ 144 and 455 (West 1993 & Supp. 2005). Although the same substantive standard governs recusal under each statute, "whether a reasonable person with knowledge of the relevant facts would conclude that the judge's impartiality might reasonably be questioned," the procedure for requesting recusal under each statute is different. *See*

*Davis v. United States*, No. 1L99-CV-00842, 6:95-CR-284, 2002 WL 1009728, at *2 (M.D.N.C. 2002), *appeal dismissed*, 55 Fed. Appx. 192 (4th Cir. 2003). Section 144 requires recusal once a litigant timely files an affidavit stating sufficient facts and reasons for the belief that the presiding judge has a personal bias or prejudice sufficient to mandate disqualification, and counsel files a certificate stating that the motion is made in good faith; section 455, on the other hand, requires the judge to evaluate his or her own actions. *See Liljeberg v. Health Svcs. Acquisition Corp.*, 486 U.S. 847, 871 n.3 (1988) (Rehnquist, C.J., dissenting); *In re Beard*, 811 F.2d 818, 827 & n.15 (4th Cir. 1987).

No affidavit or certificate as required by § 144 was filed in support of the motions here, making § 455 the only possible basis for recusal. *See Liljeberg*, 486 U.S. at 871 n.3 (considering recusal only under § 455 because plaintiff failed to file an affidavit or motion as required by § 144); *Kidd v. Dalkon Shield Claimants Trust*, 215 B.R. 106, 108 (E.D. Va. 1996) (holding that plaintiff failed to properly invoke § 144 because she filed neither an affidavit nor a certificate).

Under § 455, a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned" or "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C.A. § 455(a), (b). This inquiry is an objective

one, concerned with whether an outside observer with knowledge of all of the circumstances might have some reasonable basis for questioning the judge's impartiality. *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966); *United States v. Morris*, 988 F.2d 1335, 1337 (4th Cir. 1993) (citing *Rice v. McKenzie*, 581 F.2d 1114, 1116 (4th Cir. 1978)). When there is no reasonable basis for questioning the judge's impartiality, it is improper for a judge to recuse . *United States v. Glick*, 946 F.2d 335, 336-37 (4th Cir. 1991). In other words, a judge is equally obliged not to recuse when doing so is not necessary as it is to recuse when necessary. *In re Computer Dynamics, Inc.*, 253 B.R. 693, 698 (E.D. Va. 2000) (citing *Glick*, 946 F.2d at 336-37; *In re Va. Elec. & Power Co.*, 539 F.2d 357, 369 (4th Cir. 1976)). Ultimately, decision on a § 455 motion is committed to the sound discretion of the judge. *Id.*

The basic principles guiding the § 455 analysis are well-established. Absent extraordinary circumstances, the source of the appearance of impropriety must be nonjudicial. *Grinnell*, 384 U.S. at 583; *Morris*, 988 F.2d at 1337 (citing *Beard*, 811 F.2d at 827). Another way of stating this is that "the nature of the judge's bias must be personal and not judicial." *People Helpers Found., Inc. v. City of Richmond*, 12 F.3d 1321, 1325 (4th Cir. 1993) (citing *Shaw v. Martin*, 733 F.2d 304, 308 (4th Cir. 1984)). Recusal is not warranted where a complaint is "merely based upon the

judge's rulings in the instant case or related cases . . . or attitude derived from his experience on the bench." *United States v. Carmichael*, 726 F.2d 158, 160 (4th Cir. 1984) (citing *Phillips v. Joint Legislative Comm. on Performance & Expenditure Review of State of Miss.*, 637 F.2d 1014, 1020 (5th Cir. 1981)); *Grinnell*, 384 U.S. at 581-83)). Furthermore, an alleged bias against a particular class of litigants or a particular type of case, without showing bias to a particular party, is insufficient as a matter of law to warrant recusal. *McBeth v. Nissan Motor Corp. U.S.A.*, 921 F. Supp. 1473, 1481-82 (D.S.C. 1996) (collecting cases). Recusal may not be based on a judge's "demonstrated tendency to rule any particular way, nor on a particular judicial leaning or attitude derived from his or her experience on the bench." *Lindsey v. City of Beaufort*, 911 F. Supp. 962, 967-68 (D.S.C. 1995) (citing *Grinnell*, 384 U.S. at 563 and *Berger v. United States*, 255 U.S. 22, 31 (1921)).

In addition, the judge's bias must be bias against a party, not merely against the party's attorney. *Beard*, 811 F.2d at 830 (citing *Davis v. Bd. of School Comm'rs of Mobile County*, 517 F.2d 1044, 1050-52 (5th Cir. 1975)). "Antipathy to an attorney is insufficient grounds for disqualification of the judge." *Id.* (citing *Gilbert v. City of Little Rock, Ark.*, 722 F.2d 1390, 1398 (8th Cir. 1983)). Only when bias against an attorney is "of a continuing and personal nature and not simply bias against the

- 7 -

attorney because of his conduct" is recusal required. *Id.* (citing *Davis*, 517 F.2d at 1051).

### III

The grounds for recusal as set forth in the motions to recuse and as amplified by the attorney at the hearing on the motions, were as follows.

First, that this judge decided employment discrimination cases in favor of defendants at a greater rate than other judges of this court and has a "reputation" for doing so. In particular, the attorney asserted that this judge decided dispositive motions in favor of the plaintiffs in such cases only twenty percent of the time (Tr. Mots. Hr'g 7.), while certain other judges of this court had "far more balanced records." (Mots. ¶ 7(b).)[2]

---

[2] The source for these statistics is unclear, although the attorney indicated that it may have come from the court's public Web site listing of judicial opinions, which permits searches by key words. (Tr. Mots. Hr'g 6-7.) In any event, a win rate of twenty percent for plaintiffs in employment cases is likely above the national average. *See* Michael Selmi, *Why Are Employment Discrimination Cases So Hard to Win?,* 61 La. L. Rev. 555, 560 (2001) (noting that research had shown that "[p]laintiffs in employment cases succeeded on only 18.7 percent of the cases tried before a judge, whereas the success rates for plaintiffs in judge-tried insurance cases was 43.6 percent and 41.8 percent for personal injury cases").

An examination of the electronic case filing data base for this court shows that at the time of the filing of the present motions, Ms. Johnson had been counsel in fifty cases since 1994. Eleven of those cases were still pending. All of the remaining cases except nine were settled or voluntarily dismissed before trial. Ms. Johnson prosecuted one discrimination case to jury verdict for the plaintiff, in which this judge was the presiding judge; the remaining

- 8 -

Secondly, the attorney alleged that "[q]uestioning of counsel during oral argument in several cases have demonstrated clear contempt for counsel's positions and demonstrated prejudice against victims of sexual harassment and civil rights violations." (Mots. ¶ 7(b).) In the hearing on the motions, Ms. Johnson explained that "[t]he particular instance was in the Mary Ann Singleton case." (Mots. Hr'g Tr. 3.) In that case, *Singleton v. Department of Correctional Education*, No. 1:03CV00004, the court found that the plaintiff had not shown an actionable case of sexual harassment and granted the defendants' motions for summary judgment. The plaintiff appealed, and the Fourth Circuit unanimously affirmed, *Singleton v. Dep't of Corr. Educ.*, 115 Fed. Appx. 119 (4th Cir. 2004) (unpublished), holding that "[a]fter careful review, we conclude that Mrs. Singleton's allegations that Shinult made offensive comments, showed her unwarranted attention that made her

---

eight cases were resolved against the plaintiffs on dispositive motions. Of those eight cases, this judge decided five of the cases, Judge Wilson decided one, and Judge Williams decided two.

Cases in this court are assigned to the district judges by the clerk's office in each division as set forth in a standing order of the court. Judge Williams and this judge are assigned cases on a rotating basis in the Abingdon and Big Stone Gap divisions, with Judge Williams receiving one case and this judge receiving the next two cases filed. Most of Ms. Johnson's cases have been filed in those two divisions of the court.

uncomfortable, and continuously expressed a sexual interest in her do not meet the high standard set forth under Title VII ." *Id*. at 122.

The portion of the questioning of counsel in the *Singleton* case that Ms. Johnson complained of was described by her at the hearing on the motions to recuse as follows:

> And I went into how he talked to her breasts and the court, in a tone that was long and slow and deliberate, and very sarcastic, asked me, "Ms. Johnson, how do you talk to a woman's breasts?" Now, that took a lot longer to say that because it seemed to be with total disdain and contempt, and I don't know if the point was to embarrass me, or what, but at that point, or point, I said, "If you turn around and ask any woman in this courtroom, they will tell you how uncomfortable it is when a man speaks to you and talks to your breasts."

(Mots. Hr'g Tr. 3.) As the transcript of the oral argument in the *Singleton* case shows, the questioning was actually as follows:

> THE COURT: Well, Ms. Johnson, let's go to the merits. Tell me, tell me why the alleged acts, setting everything your client claims, why they constitute sexual harassment under Title VII. Before you do that, I assume that we're talking about hostile environment sexual harassment, not quid pro quo sexual harassment?
>
> MS. JOHNSON: Correct.
>
> THE COURT: Tell me why.
>
> MS. JOHNSON: Your Honor, under Title VII the plaintiff is required to show by, under an objective standard that the conduct involved sexual harassment, in this particular case on the average of three or four times a week.

- 10 -

> And I think if anybody asks any woman out there, I think the response would be the same, a man comes up to a woman and has a conversation with her breasts, and the conversation does not involve looking at the person, doesn't involve looking at anything but her breasts, and I think anybody, any woman would tell you that if she has a conversation with a man for more than a minute or two with the man talking to her breasts the whole time –
>
> THE COURT: Wait a minute. You mean looking at her breasts?
>
> MS. JOHNSON: Correct, correct. That's right. And I think –
>
> THE COURT: You mean when he, when she, she says that when he would talk to her, he would, his eyes would be cast down toward her breasts?
>
> MS. JOHNSON: And she felt like he was talking to her breasts. If this were to occur one time, I think a normal woman would say she felt uncomfortable and instinctive reaction would be to cover her chest while the man is talking. If it happens time and time again, day after day, week after week with the, not only starting at her breasts, but talking to her about her body, talking about her dress –

(Mot. for Summ. J. Hr'g Tr., No. 1:03CV00004, Aug. 21, 2003, 13-14.)

Ms. Johnson also complained that in the *Singleton* case the defendants had conceded that sexual harassment had occurred, but that the court had raised the defense on its own. (Mots. Hr'g Tr. 9-10.) In fact, while the defendants first argued that the plaintiff had failed to timely complain of sexual harassment through the employer's sexual harassment policy, they did not concede the merits:

> THE COURT: Let me ask you this on the merits of her claim of sexual harassment. I mean, do you concede that she's alleged a sufficient case of sexual harassment? I mean, even if, I mean, even if she had complained about it immediately –
>
> MR. RAB [counsel for defendants]: I do not concede that. I do not concede especially that she met the criteria that the Fourth Circuit has developed for acts which are so severe or pervasive as to constitute a hostile work environment for the protected category, in this case for women. No, we're not conceding it.
>
> I put it near the bottom of my brief, and maybe it was a different choice than I possibly could have made in terms of organizing it, but no, we don't concede that she makes the prima facie case with respect to that prong of the test that's required.

(Mot. for Summ. J. Hr'g Tr., Aug. 21, 2003, 5.)

The other matter raised by Ms. Johnson in her motions and at the hearing on the motions was her allegation that "[t]he judge dismissed one of counsel's cases on an *ex parte* letter from outside counsel directly to the judge representing that a case had been settled." (Mots. ¶ 7(b).) As explained by Ms. Johnson at the hearing, that allegation involved the case of *Barton v. Sprint PCS,* No. 1:04CV00019, in which Ms. Johnson represented the plaintiff, who contended that her employer had violated the provisions of the Americans with Disabilities Act. The case was set for jury trial to begin on February 15, 2005. On December 16, 2004, the parties filed a joint motion requesting the court to stay the proceedings, reciting that "[t]he parties have conditionally agreed to resolve this matter, contingent upon the settlement of

- 12 -

Case 1:04-cv-00125-JPJ-PMS   Document 41   Filed 12/07/05   Page 12 of 16   Pageid#: 410

Plaintiff's claim for workers compensation benefits arising from her alleged injuries during the course and scope of her employment by Sprint." (Mot. and Mem. in Supp. of Stipulated Order Staying Proceedings ¶ 3.) The court granted the motion and cancelled the trial by minute order entered December 17, 2004, in which it directed the parties to advise the court when the proposed settlement of the plaintiff's workers compensation claim has been approved by the Virginia Workers Compensation Commission. (Case No. 1:04CV00019, Doc. 19.) On March 21, 2005, the court received the following letter from counsel for Sprint:

> Dear Judge Jones:
>
> Pursuant to the Court's December 17, 2004 Order (Doc. 19), I am writing to advise the Court that the parties' settlement of Plaintiff's Workers Compensation Claim has been approved by the Virginia Workers' Compensation Commission and that this matter has otherwise been amicably resolved.

(*Id.*, Doc. 21.) Based on the letter, the court dismissed the case that day by the following order:

> The court having been advised that this case has been settled, it is ORDERED that the case is dismissed. If desired, the parties may hereafter within sixty (60) days submit an agreed stipulation, final order, or judgment. If no such agreed stipulation, final order or judgment is submitted, or if no party files a motion to reopen the case within sixty (60) days, this case shall, without further order, stand dismissed with prejudice.

(*Id.*, Doc. 22.)

- 13 -

Ms. Johnson contends that the case had not in fact been settled at that time, and that it had been unethical for the opposing counsel to so advise the court. While she agreed that she had never moved to reopen the case, she believed that the court would not have dismissed the case had she written a similar letter. In her words,

> [W]hat I'm saying is why do certain attorneys have the right to do that when I wouldn't be able to do that?
>
> THE COURT: Why wouldn't you be able to do it?
>
> MS. JOHNSON: Why should I? That's not the way the rules are.

(Mots. Hr'g Tr. 14-15.)

While she did not argue them at the hearing on the motions to recuse, Ms. Johnson also relied on two other incidents in her written motions. She claimed that she had received a threat of revocation of the right to practice in the court from a deputy clerk of the court because of "two minor e-filing errors" and that she "assumes such adverse action could not be taken by the Deputy Clerk without direction from the Court." (Mots. ¶ 7(b).) She also claimed that "[i]n another matter, the judge scheduled a conference call with all counsel, with no apparent purpose but to embarrass counsel, indicating that she was late in filing a pleading and admonishing counsel, when in fact no deadline had passed nor was one imminent." (*Id.*)

- 14 -

IV

Even if all of the allegations of the motions to recuse were true, it is clear that they are legally insufficient to justify recusal. More importantly for the present purposes, it is clear that no reasonable attorney would have believed that the motions were legally sufficient. Ms. Johnson's defense is that she acted in good faith in filing the motions, that is, according to her, "there was no malice; there was nothing other than what appears to be a big mistake." (Mots. Show Cause Hr'g Tr. 35.)

While I will accept Ms. Johnson's claim that she acted with no improper motive, the test under Rule 11 is one of objective reasonableness. *See Cabell v. Petty*, 810 F.2d 463, 466 (4th Cir. 1987). There is no doubt but that the attorney violated Rule 11 in regard to the motions to recuse.

In determining sanctions Rule 11 instructs the court to limit such sanctions to "what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(2). The apparent recognition by the attorney here that her filing of the motions was mistaken mitigates the severity of any sanctions. Moreover, it is hard to imagine that any other attorney practicing before this court would believe it appropriate to file the present motions. On the other hand, Ms. Johnson is not inexperienced; she has been practicing law for many years and I cannot excuse her highly unprofessional conduct here as a "rookie mistake."

- 15 -

Based on all of the circumstances, the court will impose sanctions consisting of a $250 monetary payment into court in each case, together with a formal reprimand.

Separate orders will be entered in each case.

DATED: December 7, 2005

 /s/ JAMES P. JONES
Chief United States District Judge